James J. **HUNDLEY** et al., Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 7499.

District Court, Alaska
Fourth Division, Fairbanks.
June 15, 1955.

Collins & Clasby, Fairbanks, Alaska, for plaintiffs.

Philip W. Morgan, Fairbanks, Alaska, for defendant.

HODGE, District Judge.

Plaintiff Hundley and his insurer, the United States Fidelity & Guaranty Company, in an action brought under the provisions of the Tort Claims Act, Title 28 U.S.C. § 1346(b), seek to recover damages in the sum of $951.40 for losses sustained in a collision of an automobile owned and driven by him with a "half-track" vehicle owned by the United States Army and being operated by Pfc. Donald A. Blaes, acting within the course, scope and capacity of his position and rank, at a street intersection on Eielson Air Force Base, near Fairbanks. The defendant admits the ownership of the vehicle and the operation by Pfc. Blaes for the Army, but denies negligence and alleges contributory negligence upon the part of the plaintiff.

█ The accident occurred on the afternoon of January 26, 1953, at which time the road was slippery with snow and ice, and visibility was limited to 30 feet, on account of ice-fog condition. Plaintiff was traveling south upon what is known as Broadway, which appears to have been designated by the Air Force Command as an arterial or through street, at a speed of approximately 15 miles per hour. He did not see the half-track until after he had entered the intersection, when about three feet distant, when he testified that he applied his brakes but was unable to avoid a collision with the half-track, which was then well within the intersection. The half-track had entered the intersection from his right. The road was approximately 20 feet wide. There was no obstruction of any buildings or structures at the intersection.

Pfc. Blaes was driving the Army half-track east on Wabash Avenue. There was a stop sign erected at the southwest corner of the intersection. The half-track was towing a 2½ ton Army truck. The over-all length of the half-track vehicle, truck and towing cable was 49 feet, and the gross weight of both vehicles 27,800 lbs. This joined rig accelerated very slowly as it was heavy and sluggish. There were metal curtains at the left side of the cab of the half-track fastened down, with only a peep hole, 2″ x 4″, for view on each side, which was frozen over.

Plaintiff predicates his claim largely upon the failure of the Army vehicle to

stop at the stop sign at the intersection, and also negligently failing to see plaintiff's automobile. The evidence disclosed that the driver of the half-track did stop about ten feet from the intersection, at which time the drivers of both vehicles got out, checked the tow cable, then got back in their cabs, and the vehicle and tow then proceeded across the intersection at an estimated speed of 3 miles per hour, without a further stop. When the half-track was half way across the intersection it was struck on the left-hand side by plaintiff's car. The driver did not see the approaching vehicle, but a Sgt. Gillstrap riding in the truck being towed behind, testified that he saw plaintiff's car at a distance of approximately 20 feet, at which time the towing vehicle was already in the intersection; that he attempted to warn the driver of the half-track through a pre-arranged horn signal system, but that the battery was low.

No evidence was introduced at the trial before the Court of any regulations of the Air Force Base prescribing arterial roads or the erection of stop signs. It is assumed, for the purpose here deemed necessary, that the regulations published by the Territorial Board of Road Commissioners of Alaska, pursuant to the provisions of Section 50-1-2 and 50-1-4, A.C.L.A., authorizing such Board to promulgate rules and regulations governing the use of "roads and highways" in the Territory, apply to the Air Force Base in the absence of any Federal statute on the subject, in the same manner as has been held controlling in the exercise of criminal jurisdiction in such military reservations. United States v. Press Publishing Co., 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65. Regulation 17 provides that a driver must come to a complete stop before entering any street or highway where a stop sign is "erected and maintained or approved" by the Department of Territorial Police. Regulation 18 requires the driver of any vehicle to come to a complete stop before entering any main or arterial highway. Regulation 16 provides that when two vehicles arrive at an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

I am of the opinion that the stopping of the Army vehicle within ten feet of the intersection with no obstruction other than the ice-fog was a substantial compliance with the rule requiring that he stop at the intersection; or at least that such failure to further stop was not the proximate cause of the accident upon which recovery can be based. Anderson v. Detroit Motorbus Co., 239 Mich. 390, 214 N.W. 172; Lee v. City Brewing Corp., N.Y., 18 N.E.2d 628.

However, this is not the whole duty imposed upon such driver. After he has stopped he may, in the exercise of due care, proceed into the intersection; and any right of way rule given the vehicle approaching from the right then comes into operation. But it is his duty to look to both right and left, and if a vehicle is approaching on the main highway to wait until such has passed. It is said that the degree of care of a driver on an unfavored highway at an intersection is greater than that imposed upon the driver on the favored highway, especially where conditions of weather impose an added burden of care on the driver; and greater caution is required when his view is obstructed. Such driver must be exceedingly vigilant, and should not enter an intersection with an arterial without carefully ascertaining that he may do so safely. 5 Am.Jur. 669, sec. 303, 652, sec. 269; Annotations 58 A.L.R. 1199, 81 A.L.R. 185; 60 C.J.S., Motor Vehicles, § 350, p. 824.

In this connection the size and weight of the vehicle are important factors in determining the duty which drivers owe to other travelers on the highway. 5 Am.Jur. 645, sec. 258. It has been held that one driving an automobile with solid curtains over the side windows so that the driver could not see another auto approaching was negligent, Roselle v. Beach, 51 Cal.App.2d 579, 125 P.2d 77; and the failure to exercise due care in attempting to ascertain if any vehicles were approaching upon a primary road

before entering it constitutes negligence. Wheaton v. Stuck, Wash., 209 P.2d 377. Such negligence is established in this case.

 Turning to the question of contributory negligence on the part of the plaintiff, it will be noted that although the driver on the favored highway has the right to assume that others will observe the law giving him the right of way, he does not have an absolute right of way but is bound to exercise ordinary care toward traffic on an intersecting highway; and such fact does not relieve the driver of the favored vehicle from the duty to exercise due care to avoid collision at the intersection. He has no right to assume that the way will always be clear, or that his course of travel ahead is clear and unobstructed; but it is his duty to make proper observations; and he must respect the rights of a driver who has entered the intersection first. 60 C.J.S., Motor Vehicles, § 350, p. 831; 5 Am.Jur. 668, sec. 302; Annotations 21 A.L.R. 988, 37 A.L.R. 509, 47 A.L.R. 613, 81 A.L.R. 185, 58 A.L.R. 1202; Copley v. Stone, D.C.S.C., 75 F.Supp. 203; United States v. Holt, D.C.Wash., 34 F.Supp. 560. Indeed the care and vigilance on the part of vehicular travelers varies according to exigencies that require vigilance and attention. "An automobile driver is bound to use his eyes, bound to see seasonably that which is open and apparent, and take knowledge of obvious dangers." Ries v. Cheyenne Cab Co., 53 Wyo. 104, 79 P.2d 468, 472, 4 Neg. & Comp. Cases Ann. 342. A traveler whose vision is obstructed by fog must exercise care commensurate with the situation. 5 Am.Jur. 653, sec. 272; Annotations 37 A.L.R. 587, 73 A.L.R. 1020.

▮ Some of these decisions hold to the view that the driver on the favored highway can be charged with negligence only from the time that he has knowledge that the driver on the unfavored highway does not obey the law, and that he is not guilty of negligence in acting upon the assumption that others will not yield at the intersection until he has knowledge to the contrary. See especially Jones v. McCullough, 148 Kan. 561, 83 P.2d 669, 4 Neg. & Comp. Cases Ann. 308. However, such exception does not appear applicable here as there was no evidence that the plaintiff saw or observed the Army vehicle and would have been entitled to such assumption before he reached the intersection.

I am therefore of the opinion that the proximate cause of this accident was the negligence of both drivers and that plaintiff is precluded from recovering his damage. Judgment may be presented accordingly.